UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                            CASE NO.

**DOUGLAS JOSEPH HEITMEIER**                                          **13-11320**
                                                                                                       SECTION A
DEBTOR                                                                                       CHAPTER 11

## REASONS FOR DECISION

This matter came before the Court on August 28, 2013, on the Motion for Relief from the Automatic Stay field by Whitney National Bank ("Whitney").[1]

Debtor filed a Voluntary Petition for Relief under chapter 11 of Title 11 of the United States Bankruptcy Code on May 13, 2013 ("Petition Date"). The debtor, Douglas Joseph Heitmeier ("Debtor"), owns two (2) adjacent parcels of property in Lumberton, Mississippi, separated by a road. The parcels are referred to as: 201 County Farm Rd. ("201") and 202 County Farm Rd. ("202"). Whitney claims that both parcels secure the debts incurred by Purchasing Incentives, L.L.C. ("Purchasing Incentives"). Whitney seeks relief from the automatic stay on the grounds that there is no equity in 201 and 202 and that they are not necessary to an effective reorganization. Debtor disputes the extent of Whitney's collateral interests and that the properties are not necessary to an effective reorganization. Debtor also counters that equity exists after satisfaction of Whitney's secured claims.

---

[1] Pleadings 38 and 44.

**I. Facts**

Debtor is the sole member of Purchasing Incentives, a fuel supply company. Debtor signed a Commercial Guaranty ("Guaranty") on February 23, 2011, in which he guaranteed all Purchasing Incentives' indebtedness to Hancock Bank of Louisiana ("Hancock"), now Whitney.[2] Whitney has asserted claims of $1,678,736.22 against Purchasing Incentives.[3]

On October 2, 2012, Purchasing Incentives filed a Voluntary Petition for Relief under chapter 11 of Title 11 of the United States Bankruptcy Code.[4] Purchasing Incentives has proposed a plan of reorganization ("Plan") and disclosure statement which contain provisions regarding the satisfaction of certain debts owed to Whitney.[5]

Specifically, Purchasing Incentives has proposed a Plan which fully repays Whitney's secured claim of approximately $374,303.00.[6] The remaining obligations, in excess of $1,289,000.00, are treated as unsecured claims. Distributions to unsecured claimants are payable over five (5) years and expected to net thirty percent (30%) of the amounts owed.

---

[2] Exh. 1.

[3] Case no. 12-12930, proof of claim 11.

[4] Case no. 12-12930.

[5] Case no. 12-12930, pleadings 298 and 300.

[6] Whitney's claims are secured by a bulldozer and equipment owned by Purchasing Incentives and valued by Debtor at $374,303.00.

Debtor's Guaranty is "of payment and performance and not of collection," which allows Whitney to enforce the Guaranty against Debtor even if it has not exhausted its remedies against Purchasing Incentives. Debtor does not dispute Whitney's claim amount.[7]

Whitney asserts that Debtor is the grantor of two (2) Deeds of Trust in favor of Hancock, now held by Whitney.

### A. Whitney's Indebtedness

According to Whitney's proof of claim, it is owed:

1. A promissory note dated February 18, 2008, bearing interest at the rate of 7% per annum, made by Purchasing Incentives through its sole member, Debtor, with a balance due as of the Petition Date of $828,114.50, administered on the records of Whitney under loan number XXXXXX4247 ("Note 4247");

2. A promissory note dated November 8, 2010, bearing interest at the rate of 6.75% per annum, made by Purchasing Incentives through its sole member, Debtor, with a balance due as of the Petition Date of $11,656.33, administered on the records of Whitney under loan number XXXXXX9055 (the "Bulldozer Note");

3. A promissory note dated February 17, 2011, bearing interest at the rate of 7% per annum, made by Purchasing Incentives through its sole member, Debtor, with a balance due as of the Petition Date of $629,038.95, administered on the records of Whitney under loan number XXXXXX6949 ("Note 6949"); and

4. A promissory note dated February 23, 2011, bearing interest at the rate of 7% per annum, made by Purchasing Incentives through its sole member, Debtor, with a balance due as of the Petition Date of $209,926.42, administered on the records of Whitney under loan number XXXXXX5805 ("Note 5805").

The above described promissory notes are collectively or individually referred to as the "Promissory Notes."

---

[7] *See* Proofs of Claim 5-1, 5-2, 5-3, and 5-4 in the total amount of $1,686,358.36.

**B. Whitney's Security**

**1. The 2006 Deed**

Whitney holds a deed of trust dated February 9, 2006 ("2006 Deed").[8] The 2006 Deed references both the street address and the metes and bounds description of 202 as collateral for a promissory note in the amount of $400,000.00, maturing on February 9, 2008 ("Note 1358").[9] At maturity, Note 1358 had a balance of $303,046.29.[10] On February 18, 2008, Note 1358's balance was rolled into a new note ("Note 4254) along with an additional advance increasing Note 4254's principal balance to $793,700.00.[11] Note 4254 was renewed on January 25, 2010, and assigned loan number 33000196949 ("Note 6949") which, along with another advance, resulted in a principal balance of $870,103.93.[12] Notes 1358, 4254 and 6949 were made by Purchasing Incentives and executed by Debtor as its member agent.

The 2006 Deed provides that all refinancings, renewals, extensions or modifications of the obligations it secures are also secured by the deed of trust. The 2006 Deed further provides that any other obligations of Debtor to Whitney, not specifically identified, are also secured by the deed of trust. The "Cross-Collateralization" provision states:

---

[8] Exh. 6.

[9] This particular promissory note was administered under loan number 33000061358 ("Note 1358") and was made by Purchasing Incentives.

[10] Exh. 12.

[11] *Id.* Whitney did not introduce Note 4254 into evidence. However, it offered a loan history of Note 4254 which established the foregoing facts.

[12] *Id.*

4

> In addition to the Note, this Deed of Trust also secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereinafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, whether secured or unsecured, whether direct or indirect, absolute or contingent, liquidated or unliquidated and whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter become otherwise unenforceable.[13]

This paragraph was initialed by Debtor.

### 2. 2008 Deed

Whitney holds a second deed of trust dated February 18, 2008 ("2008 Deed").[14] The 2008 Deed references the street address of 202; however, only the metes and bounds description of 201 is contained in the deed. The 2008 Deed was modified on January 25, 2010 ("2010 Modification"), but the collateral descriptions were not changed.[15] The 2008 Deed states that it collateralizes three (3) promissory notes: 1) in the principal amount of $1,085,717 maturing on February 18, 2013 ("Note 4247");[16] 2) in the principal amount of $1,000,000.00 maturing on February 18, 2009;[17] and 3) in the principal amount of $793,700.00 maturing on February 18, 2013 (Note 4254, now Note 6949).

---

[13] Exh. 6, p. 5.

[14] Exh. 7.

[15] *Id.*

[16] Exh, 2.

[17] This note was not offered or admitted into evidence and is not included in Whitney's proof of claim. It is unknown if any amounts remain outstanding on this note, but due to the lack of proof, it will not be considered.

The 2008 Deed also contains a "Cross-Collateralization" clause which provides:

> In addition to the Note, this Deed of Trust secures the following described additional indebtedness: all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereinafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, whether secured or unsecured, whether direct or indirect, absolute or contingent, liquidated or unliquidated and whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party, or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter become otherwise unenforceable.[18]

This paragraph was initialed by Debtor.

### 3. Assignment of Rents

On February 18, 2008, Debtor executed an Assignment of Rents ("Assignment").[19] The metes and bounds property description referenced in the Assignment is of 201. However, the first page of the Assignment references the street address of 202. The Assignment secures the same Promissory Notes described in the 2008 Deed.

The Assignment also contains a "Cross-Collateralization" clause which states:

> In addition to the Note, this Deed of Trust secures the following described additional indebtedness: all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereinafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, whether secured or unsecured, whether direct or indirect, absolute or contingent, liquidated or unliquidated and whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party, or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the

---

[18] Exh. 7, 2008 Deed, p. 1.

[19] Exh. 8.

obligation to repay such amounts may be or hereafter become otherwise unenforceable.

This paragraph was initialed by Debtor.

### 4. Choice of Law

The 2006 and 2008 Deeds provide that Mississippi law applies.[20] However, the Guaranty and the Promissory Notes are governed by Louisiana law.[21]

## II. Law and Analysis

### A. The Extent of Debt Secured

#### 1. The Promissory Notes

Debtor contends that the descriptions contained in the Promissory Notes as to the security collateralizing each control the extent of Whitney's security interests. Debtor argues that the itemization of security contained in each Promissory Note indicates the intention of Debtor to pledge only that security for its performance. As only Notes 6949 and 4247 contain a description of the 2008 Deed, Debtor asserts that the collateral described in the 2008 Deed secures only those notes. Since none of the Promissory Notes refer to the 2006 Deed, Debtor maintains that it is not collateral for their repayment.[22]

---

[20] Exh. 6 and 7.

[21] Exh. 2, 3, 4, and 5.

[22] Although the Promissory Notes describe various security documents as collateralizing the amounts owed, none describe the 2006 Deed. *See* Exh. 2-5.

7

Under Louisiana law, a promissory note does not have to include a description of the security collateralizing it performance.[23] Instead, the security agreement or mortgage controls and identifies the debt it secures.

A Mississippi deed of trust secures an underlying obligation by the grantor to the lender.[24] In addition to describing the collateral encumbered,[25] a deed of trust identifies the debt or obligation it secures.[26] Consequently, the provisions of the Promissory Notes that reference security agreements or deeds of trust do not control the nature or extent of the collateral available to secure the amounts due. Instead, the extent of Whitney's secured claim is defined by the 2006 and 2008 Deeds and Assignment.

**2. Whitney's Security Documents**

Debtor also challenges the extent of Whitney's secured claim based on two (2) alleged flaws in its security documents. First, Debtor alleges that the security documents only encumber parcel 202 leaving parcel 201 free and clear from the obligations due to Whitney. Second, Debtor avers that the security documents limit the extent of collateralized debt because they lack specific reference to some of the outstanding Promissory Notes.[27]

---

[23] LA C.C. Art. 3298 and La. Prac. Secured Transactions § 4:37 (2012-2013 ed.).

[24] Mississippi Real Estate Contracts and Closings § 4:55 (2d ed.); 59 C.J.S. Mortgages § 15.

[25] Miss. Code Ann. $75-9-203(b)(3).

[26] 7A MS Prac. Encyclopedia MS Law § 66:55.

[27] Debtor, as a debtor-in-possession, has standing to assert this challenge because as the estate's representative, he is empowered with the rights of creditors/third parties. *O & G Leasing, LLC v. First Security Bank (In re O & G Leasing, LLC)*, 456 B.R. 652, 664 (Bankr.S.D.Miss. 2011) (quoting 68A Am. Jur. 2d Secured Transactions § 176 (2003)).

### a. The 2006 Deed

The 2006 Deed references as collateral both the street address and the metes and bounds description of 202. Whitney contends that the 2006 Deed includes 201 because "everyone always referred to all the property as 202." Whitney's position is not sustainable. Mississippi law requires that the collateral be reasonably identified,[28] and the 2006 Deed does not reasonably identify 201. Regardless of the parties habits, parcels 201 and 202 are distinct and contain different legal descriptions and physical addresses. As a result, reference to one parcel by street address and metes and bounds description in no way indicates the intent to encumber a wholly separate parcel. For this reason, only 202 is encumbered by the 2006 Deed.

Additionally the parties dispute the amount secured by this parcel. The 2006 Deed specifically states that it secures Note 1358 and all extensions, modifications, refinancings, consolidations or renewals of the note. The Court finds that as a result of refinancings, extensions, renewals or modifications of Note 1358, Note 6949 was created and is secured by the 2006 Deed. The balance outstanding on Note 6949 as of the Petition Date was in excess of $629,038.00.

### b. The 2008 Deed

Again, two (2) challenges have been raised to the 2008 Deed. The first involves the property it encumbers and the second the debt it secures. The 2008 Deed contains the metes and bounds property description for 201. However, the first page of the 2008 Deed references the street address

---

[28] Miss. Code Ann. § 75-9-108.

for 202. Debtor argues that the initial inclusion of 202's street address is insufficient to encumber that parcel particularly when the more detailed metes and bounds description excludes the lot.[29]

Under Mississippi law, a deed of trust must contain a description of the collateral it encumbers sufficient to "reasonably identif[y] what is described."[30] A description of collateral is sufficient, "whether or not it is specific, if it reasonably identifies what is described,"[31] and it reasonably identifies the property if it puts "a reasonably diligent person on notice that there may be a security interest in the collateral."[32] "Therefore, if the Court finds that the description is sufficient to raise a red flag to third parties that more investigation may be necessary, the description is sufficient for the attachment of the security interest."[33]

Under Mississippi law, either a metes and bounds description or a street address alone is sufficient to reasonably identify the collateral.[34] The street address for parcel 202 and the metes and bounds description of parcel 201 are sufficient to "raise a red flag to third parties" that both properties may be subject to the security interest. Therefore, Court finds that both 201 and 202 are sufficiently described in the 2008 Deed and both secure the obligations set forth in the 2008 Deed.

---

[29] Debtor, as a debtor-in-possession, has standing to assert this challenge because as the estate's representative, he is empowered with the rights of creditors/third parties. *O & G Leasing, LLC*, 456 B.R.at 664.

[30] Miss. Code Ann. § 75-9-108.

[31] *Id.*

[32] *O & G Leasing, LLC,* 456 B.R. at 662.

[33] *Id.*

[34] *See Sunburst Bank v. Shurden (In re Findley)*, 76 B.R. 547, 552 (Bankr.N.D.Miss. 1987) (legal metes and bounds description not necessary as long as property is reasonably identified).

The 2008 Deed specifically provides that it secures two (2) notes that were offered at the hearing, Notes 4247 and 6949. Notes 4247 and 6949 have a combined outstanding balance as of the Petition Date of $1,457,153.45.

### B. Cross-Collateralization

There is significant disagreement between the parties as to the effect of the cross-collateralization provisions contained in the 2006 and 2008 Deeds. Debtor contends that Whitney's failure to specifically describe all obligations outstanding between itself and Debtor or Purchasing Incentives precludes the application of the 2006 and 2008 Deeds to unlisted debt. Debtor argues that the listing of specific obligations in the Deeds supports a finding that Debtor did not intend to encumber the property as to other known but omitted obligations.

#### 1. Debt Existing on the Date the Deeds Were Executed

The 2006 and 2008 Deeds contain cross-collateralization or "dragnet" clauses, as they are called in Mississippi. If a dragnet clause is "clear and unambiguous as to the collateral securing the other debts," the debts are secured.[35] When a dragnet clause contains "broad language which purports to secure all debts of a borrower, but does not specifically list existing debt, then the agreement is ambiguous as to whether the antecedent debt is secured" and the intent of the parties must be determined.[36]

In the case of the 2006 Deed, the only outstanding debt at its execution was Note 1358, which is described in the Deed. The Bulldozer, 4247 and 5308 Notes were not in existence and, therefore, could not have been included in its defined terms. Further, the obligations under Debtor's

---

[35] *Merchants Nat. Bank v. Stewart*, 608 So.2d 1120, 1126 (Miss. 1992).

[36] *Wallace v. United Miss. Bank*, 726 So.2d 578, 586-587 (Miss. 1998).

Guaranty also post date the execution of the 2006 Deed as the Guaranty was not executed until February 23, 2011.

The 2008 Deed was executed on February 18, 2008, and was modified on January 25, 2010. At the time of its initial execution, Notes 4247 and what became Note 6949 were outstanding and both are described as debts it secures. The Bulldozer and 5805 Notes were executed in November 2010 and February 2011 respectively and the Debtor's Guaranty on February 23, 2011. Therefore, none of these obligations were outstanding as of the initial execution date or the subsequent modification date of the 2008 Deed and could not have been included in either. As a result, when the 2006 and 2008 Deeds were executed, they identified all known outstanding obligations.

### 2. Future Debt

"It is well settled in [Mississippi] that a dragnet clause is valid to encompass future debts that a borrower may incur, within the security agreement."[37] Even if the dragnet clause uses standard "boilerplate" language as to future advances, if it is clear and unambiguous, it will be enforced.[38] It also does not matter whether the types of debt are similar in nature.[39]

Debtor contends that any subsequently executed Promissory Note must specifically reference the past deed of trust that secures it. However, Debtor has cited no authority for this proposition nor has any been found by the Court. Again, under Louisiana law, a promissory note does not have to indicate that it is secured by a mortgage or security agreement.[40]

---

[37] *Stewart*, 608 at 1125. *See also* Miss. Code Ann. § 75-9-204(c).

[38] *In re Smink*, 276 B.R. 156, 166 (Bankr.N.D.Mass. 2001).

[39] Miss. Code Ann. § 75-9-204(c), Uniform Commercial Code Comment 7.

[40] LA C.C. Art. 3298 and La. Prac. Secured Transactions §4:37 (2012-2013 ed.).

The cross-collateralization clauses in the 2006 Deed, 2008 Deed and the Assignment are clear and unambiguous that they secure "all obligations, debts, and liabilities" of "Grantor to Lender" "hereinafter arising." The "Grantor" is defined in the 2006 Deed, 2008 Deed and the Assignment as Debtor. Debtor's obligations to Whitney arise from his Guaranty which provides:

> Grantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender. The Indebtedness means all principal, interest, and other amounts, cost and expenses payable under the Note or Related Documents... The Note means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender.... Borrower means Purchasing Incentives.

Since the Guaranty was not executed until after the obligations owed to Whitney were in existence, and because Debtor was personally aware of each of the obligations (having executed each Promissory Note on behalf of Purchasing Incentives), Debtor cannot argue that the Guaranty does not encompass the entire Purchasing Incentives debt. Further, since the additional obligations under the Guaranty were incurred subsequent to the execution of the 2006 and 2008 Deeds, they are secured by the Deeds.[41]

### C. Relief from the Automatic Stay

Section 362 of the U. S. Bankruptcy Code provides an automatic stay against, among other things, collection from the debtor and commencement or continuation of actions involving estate property. Whitney prays that the Court lift the automatic stay so it can pursue any remedies it may have against 201 and 202. A court can lift the automatic stay if "the debtor does not have equity in the property and the "property is not necessary to an effective reorganization."[42]

---

[41] The Assignment would also secure the debts. However, since both parties agreed that the parcels were not income producing, the Assignment is irrelevant to this Opinion.

[42] 11 U.S.C. § 362(d)(2).

**1. Equity**

Whitney values parcel 201 at $220,000.00 and parcel 202 at $550,000.00.[43] Debtor's appraiser opined that the properties have a combined value of $1,000,000.[44] As previously stated, the 2008 Deed directly refers to Notes 6949 and 4247 which have an outstanding balance of $1,457,153.45. The 2006 Deed directly refers to Note 6949 which has a balance of $629,038.95. Both the 2006 and 2008 Deeds secure the Guaranty which includes the Bulldozer and 5805 Notes, having an additional balance due of $221,582.75. Regardless of which appraised value is taken, the debt due to Whitney exceeds the value of the parcels and leaves a deficiency balance. Thus, the Court finds it unnecessary to reconcile the values presented because under a finding most favorable to Debtor, no equity exists in either property.

**2. Necessary to an Effective Reorganization**

Since Whitney has already proven that there is no equity, Debtor has the burden of proving that 201 and 202 are necessary to an effective reorganization.[45] Two (2) elements must be established to meet this burden of proof: 1) that there will be an effective reorganization, and 2) that the property is necessary to accomplish the reorganization. "There must be 'a reasonable possibility of a successful reorganization within a reasonable time.'"[46]

---

[43] Exhibit 10.

[44] Exhibit 13.

[45] *United Sav. Assn'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 375, 108 S.Ct. 626, 632-633 (1988). *See also* 11 U.S.C. § 362(g).

[46] *Id.* at 376.

Debtor's valuations require him to service a secured claim in favor of Whitney of $1,000,000.00.[47] Amortizing that claim at seven percent (7%) interest over thirty (30) years would require Debtor to make payments in excess of $79,000.00 per year.[48] Even assuming the debt could be amortized at interest only for a period of time, aggregate annual payments of $70,000.00 would be required.

Although Debtor has yet to propose his plan or disclosure statement, Purchasing Incentives is in the process of confirming its Plan. Under the terms of Purchasing Incentive's Plan, Debtor will receive a salary of $102,000.00 annually for services rendered post-confirmation to Purchasing Incentives.[49] This proposal is in accord with Debtor's Schedule I which reflects gross income, before taxes, of $8,500.00 per month or $102,000.00 annually. His monthly living expenses are itemized on Schedule J as $7,835.00 and include a current mortgage payment of $4,909.58 but make no provision for income or payroll taxes.[50] Debtor's net disposable income, $664.41 is insufficient to close the gap between the amounts necessary to service Whitney's claim and Debtor's estimated mortgage payment. Debtor offered no evidence of additional income available to him to fund a plan. Given Debtor's living expenses and the extent of debt service required to satisfy Whitney, a

---

[47] Exhibit 13. Assuming Purchasing Incentives were to confirm its Plan, even after giving credit for amounts it proposes to pay, the total debt owed to Whitney would exceed $1,000,000.00. As it is, Whitney's Guaranty does not require that it forebear from collection against Debtor except to the extent actual payments are received and applied to reduce the outstanding debt.

[48] Three (3) of the Promissory Notes bear interest at the contractual rate of 7%. Only the Bulldozer Note, with a balance of approximately $11,000, bears a slightly lower rate of 6.75% per annum.

[49] Case no. 12-12930, pleading 298, p. 13.

[50] Debtor offered no evidence to support his supposition that payments of $4,909.58 per month would provide Whitney the present value of $1,000,000.00.

confirmable plan is not feasible. The Court finds that there is no reasonable possibility of an effective reorganization that would include a $1,000,000.00 secured obligation to Whitney.

Further, Debtor has failed to establish that 201 and 202 are necessary to his reorganizational effort. At the hearing, both parties admitted that neither property produced income but are used for residential purposes. The physical place of Debtor's residence is unnecessary to his reorganization. To the extent Debtor maintains that the parcels could produce income and are, therefore, necessary to effect a reorganization, Debtor failed to offer any proof of how, when and in what amount income might be generated from either parcel.[51] Therefore, Debtor has failed to meet his burden of proof that 201 and 202 are necessary to an effective reorganization.

### III. Conclusion

The Motion for Relief from the Automatic Stay filed by Whitney is granted. The Court will enter a separate order in accord with these Reasons.

New Orleans, Louisiana, October 18, 2013.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[51] Although Debtor's expert opined that the parcels' highest and best use was as an "equine farm," Debtor does not operate an equine farm at present. No evidence regarding the feasibility of such a venture or the net income available, should one be undertaken, was offered.